UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

Norberto Medina-Rodriguez.

    Plaintiff,

v.

[1] MUNICIPALITY OF LUQUILLO

[2] DOWNTOWN DEVELOPMENT
CORPORATION

[3] SELECTOS RIO GRANDE LLC

[4] ENCANTO RESTAURANTS, INC.

[5] LA FAMILIA BAKERY # 2 INC.

[6] ANTONINOS PIZZA

[7] FINA CHINA

    Defendant(s).

**CIVIL ACTION**

## COMPLAINT

1.    This is a civil rights action by plaintiff Norberto Medina Rodriguez ("Plaintiff") for discrimination at the shopping center, buildings, structures, facilities, complex, property, land, development, and/or surrounding business complex known as:

    Rio Grande Plaza
    State Road PR-3 Km 28.0
    Rio Grande, PR 00745
    GPS Coordinates: (18.379376N,  65.792548W)



    Supermercado Selectos, Plaza Rio Grande

1

State Road PR-3 Km 28.0
Rio Grande, PR 00745

Kentucky Fried Chicken, Plaza Rio Grande
State Road PR-3 Km 28.0
Rio Grande, PR 00745

La Familia Bakery, Plaza Rio Grande
State Road PR-3 Km 28.0
Rio Grande, PR 00745

Antoninos Pizza, Plaza Rio Grande
State Road PR-3 Km 28.0
Rio Grande, PR 00745

Fina China, Plaza Rio Grande
State Road PR-3 Km 28.0
Rio Grande, PR 00745

(hereafter collectively referred to as "the Facility")

2.      Plaintiff seeks injunctive and declaratory relief, attorney fees and costs, against  [1]
MUNICIPALITY      OF      LUQUILLO,      [2]      DOWNTOWN      DEVELOPMENT
CORPORATION,      [3]      SELECTOS      RIO      GRANDE      LLC,      [3]      ENCANTO
RESTAURANTS, INC.   [4] LA FAMILIA BAKERY # 2 INC.; [5] ANTONINOS
PIZZA; [6] FINA CHINA (hereinafter collectively referred to as "Defendant" or
"Defendants"), pursuant to the Americans with Disabilities Act of 1990 (42 U. S. C.
§12131 et seq. and 42 U.S.C. §§ 12101 et seq.) ("ADA").

## JURISDICTION

3.      This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.      Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## VENUE

5.     All actions complained of herein take place within the jurisdiction of the United States District Court for the District of Puerto Rico, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

6.     Defendants own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation.

7.     Plaintiff is a Puerto Rico resident, lives in Carolina, Puerto Rico, is *sui juris*, and qualifies as an individual with disabilities as defined by the ADA. Plaintiff is severely limited or unable to engage in the major life activity of sitting, standing, and walking. Prior to instituting this action, Plaintiff suffered from a "qualified disability" under the ADA and the Puerto Rico Department of Motor Vehicles issued a permanent handicap permit (No. 2015982 – parking spaces) to the Plaintiff.

## FACTS

8.     The Facility is a public accommodation facility, open to the public, which is intended for nonresidential use and whose operation affects commerce.  Specifically, Rio Grande Plaza is a shopping center at State Road PR-3 Km 28.0, Rio Grande, PR 00745 owned or managed by Downtown Development Corporation. Supermercado Selectos is a supermarket located at Plaza Rio Grande or adjacent to Plaza Rio Grande. Kentucky Fried Chicken is a restaurant located at Plaza Rio Grande or adjacent to Plaza Rio Grande. La Familia Bakery is a restaurant at Plaza Rio Grande or adjacent to Plaza Rio Grande. Antoninos Pizza is a restaurant at Plaza Rio Grande or adjacent to Plaza Rio Grande. Fina China is a restaurant at Plaza Rio Grande or adjacent to Plaza Rio Grande. Plaintiff lives in Carolina, Puerto Rico, approximately 20 minutes away from the Facility by motor vehicle. Prior to instituting this action, Plaintiff visited Rio Grande Plaza over

five (5) times and for years he is personally aware of the barriers that constitute a deterrent to his access; however, prior to instituting this action, Plaintiff visited La Familia Bakery #2 approximately (2) times and for years he is personally aware of the barriers that constitute a deterrent to his access.

9.  Plaintiff visited the Facility and encountered barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facility. Plaintiff personally encountered the following barriers at the Facility during Plaintiff's visit to the Facility in November 12, 2016 and January 2017, among others.

10. At the time of the filing of this civil action, Plaintiff is aware of the barriers at the Facility that remain in place and constitute a deterrent to his access.

**RIO GRANDE PLAZA (COMMON AREAS):**

a)  This property fails to comply with section with: total number of parking space, ADA Section 208 – Table 208.2. While there are purportedly accessible parking spaces are provided; however, none are ADA compliant and thus, the minimum number of accessible parking spaces is not met.

b)  This property fails to comply with: Parking Sign. ADA compliant parking signage is inexistent.

c)  This property fails to comply with: *location of accessible parking spaces*. Accessible parking spaces must be located on the shortest accessible route of travel to an accessible facility entrance.

d)  A properly configured route of travel is not provided from the building entrance/exit to exterior participation areas.

e) A properly configured accessible route is not provided from the designated accessible parking and public right of way to the designated accessible building entrance.

f) Cross slopes along exterior route of travel exceed the maximum allowable.

g) Designated accessible parking stalls and access aisles exceed the maximum allowable slope.

h) The exterior route of travel is less than the minimum required width in some areas as a result of policies and procedures in which shopping carts and other movable objects constitute obstructions.

i) Changes in vertical level within access aisles and along exterior route of travel exceed the maximum allowable height.

j) Proper tow-away signage is not provided.

k) Proper identifying pavement markings are not provided at the designated accessible parking stalls and access aisles.

l) Proper identifying signage is not provided at the designated accessible parking stalls.

m) The designated accessible parking stalls and access aisles are less than the required minimum depth.

n) Proper wheel stops to prevent parked vehicles from encroaching into the route of travel are not provided.

**BARRIERS AT SUPERMERCADO SELECTOS**

o)  Proper clear floor area is not provided at the push side of the toiletroom door.

p)  Failure to provide grab bars at 33 inches minimum and 36 inches maximum above the finish floor measured to the top of the gripping surface.

q)  Point of sale counter exceeds maximum allowable height of 38" and without proper signage.  exceeds maximum allowable height and is less than the required minimum width.

r)  Proper clear floor area is not provided at fire extinguisher;

s)  Fire extinguisher is located too high.

**BARRIERS AT  KENTUCKY FRIED CHICKEN**

t)  There is inadequate **clear turning space** in the stall in violation of section 603.2.1 of the 2010 ADAAG regulations. This made it difficult for Plaintiff to safely utilize the restroom facilities.

u)  Proper transfer clearance is not provided within toiletroom, as the area is too obstructed and too small.

v)  Failure to provide the water closet in the proper position relative to the side wall or partition in violation of 2010 ADAAG secs 604, 604.2.

**BARRIERS AT LA FAMILIA BAKERY #2**

w)  Providing **counter heights exceeding 36 inches** making it impossible or unnecessarily difficult to service a disabled person pursuant to 2010 ADAAG §§ 904, 904.4, 904.4.1, 904.4.2.

x)  Failure to provide the proper insulation or **protection for the plumbing under a sink or countertop** in violation of 2010 ADAAG secs. 606, 606.5.

6

y)  Providing **grab bars** of improper horizon length or spacing on the back or the side wall in violation of 2010 ADAAG secs. 604, 604.5, 604.5.1, 604.5.2, 609, 609.4.

z)  Failure to provide **signage for an accessible restroom.**

aa) The sink hardware has operable parts which require **tight grasping, pinching or twisting of the wrist** in violation of section 309.4 of the 2010 ADAAG regulations.

bb) Items on counter area, i.e. merchandise placed on counter for pickup by customers or objects impede the minimum allowable width at the counter.

cc) No purportedly accessible parking space and no access aisle adjacent to an accessible parking space.

dd) There is inadequate **clear turning space** in the stall in violation of section 603.2.1 of the 2010 ADAAG regulations. This made it difficult for Plaintiff to safely utilize the restroom facilities.

**BARRIERS AT ANTONINOS PIZZA**

ee) The force required to open the restroom door exceeds the maximum allowable.

ff) Providing **counter heights exceeding 36 inches** making it impossible or unnecessarily difficult to service a disabled person pursuant to 2010 ADAAG §§ 904, 904.4, 904.4.1, 904.4.2.

gg) Providing **grab bars** of improper horizon length or spacing on the back or the side wall in violation of 2010 ADAAG secs. 604, 604.5, 604.5.1, 604.5.2, 609, 609.4.

hh) Proper clearances are not provided at exterior table seating spaces

7

**BARRIERS AT FINA CHINA**

ii) Providing **counter heights exceeding 36 inches** making it impossible or unnecessarily difficult to service a disabled person pursuant to 2010 ADAAG §§ 904, 904.4, 904.4.1, 904.4.2. The transaction counter exceeds maximum allowable height and is less than the required minimum depth.

jj) There is inadequate **clear turning space** in the stall in violation of section 603.2.1 of the 2010 ADAAG regulations. This made it difficult for Plaintiff to safely utilize the restroom facilities.

kk) Providing **grab bars** of improper horizon length or spacing on the back or the side wall in violation of 2010 ADAAG secs. 604, 604.5, 604.5.1, 604.5.2, 609, 609.4.

ll) Proper clearances are not provided at exterior table seating spaces

11. The public sidewalk adjacent to the Facility, owned and operated by Co-Defendant City of Rio Grande does not comply with Title II of the ADA because of architectural barriers at the public sidewalk. Regulations issued pursuant to the ADA1 state that "no qualified individual with a disability shall, because a public entity's facilities are inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." 28 C.F.R. § 35.149. A public entity must make its services, programs, or activities "readily accessible" to disabled individuals. See 28

---

[1] Because Congress explicitly authorized the Attorney General to promulgate regulations under the ADA, *see* 42 U.S.C. § 12134(a), the regulations "must [be given] legislative and hence controlling weight unless they are arbitrary, capricious, or plainly contrary to the statute." *United States v. Morton,* 467 U.S. 822, 834, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984).

C.F.R. § 35.150 ("A public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities."). A public entity need not "make structural changes in existing facilities where other methods are effective in achieving compliance with this section." 28 C.F.R. § 35.150(b)(1). If one facility is inaccessible, a public entity may comply with Title II by making its services, programs, and activities available at another facility that is accessible. See Parker v. Universidad de Puerto Rico, 225 F.3d 1, 5 (1st Cir.2000). Pursuant to these requirements, the City of Rio Grande was obligated to ensure that each service, program, or activity at its sidewalk adjacent to Rio Grande Plaza, "when viewed in its entirety," was readily accessible to individuals with disabilities. Id. Here, Plaintiff specifically alleges that certain elements of the sidewalk prevent him from using the sidewalk and thus, (1) enjoying the services, programs, and activities offered by the City and (2) enjoying the services, programs, and activities offered by other Co-Defendants. The curb ramps at the sidewalk adjacent to Rio Grande Plaza impede his ability to full and equal access to the Facility. Below is an image a curb ramp, adjacent to Rio Grande Plaza, that not in compliance and thus, constitutes a hazard and determent to access.



12.    It is Plaintiff's intention to eliminate all barriers which exist at Rio Grande Plaza (common areas), Kentucky Fried Chicken, Supermercado Selectos, Fina China, La

Familia Bakery #2, Antoninos Pizza, or the sidewalk adjacent to Rio Grande Plaza, even though he does not have the technical knowledge to identify all barriers to access at this stage of the litigation. Leave to amend will be sought in due course and Plaintiff will point out all discriminatory barriers to access at the sidewalk and access

13.    Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

14.    Plaintiff has knowledge of the barriers described in paragraph 10 and is currently deterred from patronizing defendant's business or using the public sidewalk adjacent to Rio Grande Plaza due to defendant's failure to comply with the ADA. Plaintiff plans to avail himself of the goods and services offered to the public at the property and will return to the Facility once the barriers are removed. Plaintiff believes that the barriers constitute a deterrent to his use of the facility, because it renders it more difficult for him to enter the facility and avail himself to the goods and services offered to the public at the Facility.

15.    Defendants knew, or should have known, that these elements and areas of the Facility were inaccessible, violate federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendants have the financial resources to remove these barriers from the Facility (without much difficulty or expense), and make the Facility accessible to the physically disabled. To date, however, Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

16.  At all relevant times, Defendants have possessed and enjoyed sufficient control and authority to modify the Facility to remove impediments to wheelchair or walker access and to comply with the 2010 Standards for Accessible Design. Defendants have not removed such impediments and have not modified the Facility to conform to accessibility standards. Defendants have intentionally maintained the Facility in its current condition and have intentionally refrained from altering the Facility so that it complies with the accessibility standards.

17.  Plaintiff further alleges that the (continued) presence of barriers at the Facility is so obvious as to establish Defendants discriminatory intent. On information and belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Facility; conscientious decision to maintain the architectural layout (as it currently exists) at the Facility; decision not to remove barriers from the Facility; and allowance that Defendants' property continues to exist in its non-compliance state. Plaintiff further alleges, on information and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

18.  As one of the compromises involved in Congress passing and then President George H.W. Bush signing the ADA into law in 1990, enforcement of Title III, the public accommodation section, is almost entirely by private lawsuits. Although the U.S. Department of Justice has jurisdiction to enforce the ADA, there are no administrative agencies or federal "building inspectors," and no costly bureaucracy to enforce the law, an economic factor that was appealing to both to "conservatives" (and "liberals," to some

extent) in 1990. Passage of the ADA in 1990 was a compromise in this respect: attorney

fees were made awardable per Section 505 to a prevailing disabled plaintiff, to encourage

private attorneys to handle enforcement actions, rather than putting in place a potentially

expensive bureaucracy to enforce this law.  Encouraging competent attorneys to handle

ADA cases is necessary for effective enforcement of the law, as the U.S. Department of

Justice has generally not involved in individual plaintiff cases, or enforcement of the

"readily achievable" standard, at least not in Puerto Rico.   The importance of

encouraging ADA cases, and recognition that ADA carry out an important role as private

attorney general, was underscored by Northern District Chief Judge Thelton Henderson

in Walker v. Carnival Cruise Lines, 107 F. Supp. 2d 1135, 1140 (N.D. Cal. 2000):

*There can be no question that the Americans With Disabilities Act, passed in 1990,
established as law the nation's interest in eradicating the bigotry and barriers faced by
individuals with disabilities. 42 U.S.C. § 12102 et. seq. (hereafter "ADA"). In fact, the
ADA states its first goal as being "to provide a clear and comprehensive national
mandate for the elimination of discrimination against individuals with disabilities." See
42 U.S.C. § 12101(b)(1) (1999). The ADA creates the possibility that successful
plaintiffs may establish permanent changes in the design and physical configuration of
structures to better accommodate the disabled. 42 U.S.C. § 12101(a)(5). The benefits of
such changes clearly redound not only to the plaintiffs themselves, but to similarly
situated disabled persons, and the entire society at large. As a result, plaintiffs or
plaintiff classes who bring suit pursuant to the ADA do so in the role of "private
attorneys general" who seek to vindicate "a policy `of the highest priority.'" See
Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 417, 98 S.Ct. 694, 698, 54 L.Ed.2d
648. See also Bruce v. City Of Gainesville, Ga., 177 F.3d 949, 951 (11th Cir.1999)
(discussing ADA plaintiffs as private attorneys general); Rosenberg v. Merrill Lynch,
Pierce, Fenner & Smith, Inc., 170 F.3d 1, 11 (1st Cir.1999);*

*For example, successful ADA plaintiffs confer a tremendous benefit upon our society at
large, in addition to the attainment of redress for their personal individual injuries,
successful ADA plaintiffs, like plaintiffs under Title VII, are entitled to 42 U.S.C. section
1988's fee shifting provision. See 42 U.S.C. § 1988. As the Eleventh Circuit recently has
explained,*

> *"[i]n Title VII cases as well as cases under the ADA, the enforcement of civil
> rights statutes by plaintiffs as private attorneys general is an important part of
> the underlying policy behind the law. Such a policy ensures an incentive for*

> `impecunious' plaintiffs who can ill afford to litigate their claims against
> defendants with more resources...."

The United States Department of Justice has also supported the necessity of private suits under the ADA:

> Private plaintiffs play an important role in enforcing the ADA, particularly in the area of public accommodations, which includes a large number of entities. See 42 U.S.C. 12188(a)(1). The United States could not investigate every place of public accommodation in the country to determine if it is in compliance with the ADA. Effective enforcement of Title III, therefore, depends upon a combination of suits by the United States and litigation by individuals with disabilities who are aware of and encounter violations in their local communities. The United States therefore has an interest in ensuring that the standing of private plaintiffs to sue under Title III is not unduly restricted. {From U.S. Department of Justice amicus brief in Chapman v. Pier 1 Imports (US), Inc., 631 F.3d 939 (9th Cir. 2011)}[2] See also, Suarez-Torres et al v. Restaurantes Fridas, Inc., Civil No. 16-1912 (FAB) (CVR) (Docket No. 12) ("ADA complaints by private persons are the primary method of obtaining compliance with the law); Fiedler v. Ocean Properties, Ltd., 683 F. Supp. 2d 57, 71-72 (D. Me. 2010) (same).

Plaintiff's "status as a tester does not deprive him of standing to maintain his civil action for injunctive relief" under the Americans with Disabilities Act. Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1332 (11th Cir. 2013). (""[T]he tester motive behind Houston's past and future visits to the Presidente Supermarket does not preclude his having standing to sue for invasions of his legal rights under §§ 12182(a) and 12182(b)(2)(A)(iv)."). And, there is no "bona fide patron" requirement for a lawsuit for violations of §§ 12182(a) and

---

[2] The U.S. Department of Justice amicus brief in Chapman is available at:
https://www.justice.gov/sites/default/files/crt/legacy/2010/12/14/chapman.pdf

12182(b)(2)(A)(iv) of Title III. Id. at 1334. See also, <u>Tandy v. City of Wichita</u>, 380 F.3d 1277, 1287 (10th Cir. 2004); Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1332 (11th Cir. 2013). The First Circuit has not yet addressed the question of testers directly in the context of the ADA public accommodation provision. However, the Tenth and Eleventh Circuits have held that a tester can satisfy the standing requirement under the ADA for injunctive relief.)

As other courts have recognized, a high number of suits by an individual plaintiff is a result of the ADA's private enforcement scheme. The Ninth Circuit has found:

> [T]he ADA does not permit private plaintiffs to seek damages, and limits the relief they may seek to injunctions and attorneys' fees. [The] the unavailability of damages reduces or removes the incentive for most disabled persons who are injured by inaccessible places of public accommodation to bring suit under the ADA. As a result, most ADA suits are brought by a small number of private plaintiffs who view themselves as champions of the disabled. District courts should not condemn such serial litigation as vexatious as a matter of course. For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA.

<u>Molski v. Evergreen Dynasty Corp.</u>, 500 F.3d 1047, 1061-62 (9th Cir. 2007) (internal citations omitted)

The fact that a plaintiff has filed suits in the past alleging similar disparate treatment is not a basis for declining jurisdiction. See <u>D'Lil v. Best W. Encina Lodge & Suites</u>, 538 F.3d 1031, 1040 (9th Cir. 2008) (overruling district court's dismissal of plaintiff's suit where plaintiff had been involved in 60 past ADA suits).  See also, <u>Houston v. Marod Supermarkets, Inc.</u>, 733 F.3d 1323, 1326 (11th Cir. 2013) ("It is not unprecedented in this country for advocacy groups and individual members of advocacy groups to find it necessary to file a long trail of lawsuits in federal courts to enforce legal and civil rights."). See also, <u>Havens Realty Corp. v. Coleman</u>, 455 U.S. 363, 374 (1982) (holding that testers may qualify for standing under the Fair Housing Act).  At this pleading stage, these rebuttable factual allegations are presumed true. At this

stage, the Court must accept as true all well pleaded allegations in the Complaint. As the record as it stands now, any dispositive motion must be denied. It is noteworthy that Plaintiff intents to testify about the barriers encountered and he does not need to present precise measurements or utilize experts to prevail. Kohler v. Presidio Int'l, Inc., 782 F.3d 1064, 1068-69 (9th Cir. 2015) (citing Strong v. Valdez Fine Foods, 724 F.3d 1042, 1046-47 (9th Cir. 2013)).  However, Plaintiff will announce an experienced expert witness in due course.  It also noteworthy that a plaintiff's other lawsuits are not a part of the record, and fees should not be denied outright for excessive or duplicative attorney tasks. Jankey v. Poop Deck, 537 F.3d 1122, 1132-33 (9th Cir. 2008). All decisions of the U.S. District Court for the District of Puerto Rico support Plaintiff's position.  Medina-Rodriguez v. Cooperativa de Farmacias Puertorriquenas et al, Civil No. 15-3185 (CCC) (denying a similar motion to dismiss for lack of standing); Rodriguez-Vazquez v. Consejo de Titulares del Condominio Centro Comercial El Canton Mall, Civil No. 15-3633 (PAD)(BJM) (Docket No. 79) ("**a** disabled individual may invoke Title III to demand that a building be brought into compliance with the ADA even though he only entered the building once, quoting  Dudley v. Hannaford Bros. Co., 333 F.3d 299, 305 (1st Cir. 2003); Caraballo-Rivera v. Farmacia Alejandro, Civil No. 16-3123 (SCC) (Denying a motion to strike complaint); Suarez-Torres v. Borinquena Metro, Civil No. 16-1609 (DRD) (Docket No. 12) (collecting cases and noting that "the Court will not discourage persons from pointing out public accommodations that are breaking the law"); Suarez-Torres et al v. Restaurantes Fridas, Inc., Civil No. 16-1912 (FAB) (CVR) ("the Supreme Court has instructed courts to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, complaints by private persons are the primary method of obtaining compliance with the law."); Suarez-Torres et al v. Panaderia y Reposteria España, Inc. et al, Civil No. 1818 (PG) (denying

motion to dismiss based on lack of standing); <u>Medina-Rodriguez v. China Temple, Inc. et al</u>, Civil No. 2579 (GAG) (Doc. 13) ("Plaintiff has met the Rule 8 pleading threshold and also has pleaded standing to pursue this action"); <u>Medina-Rodriguez v. Torres D' Pizza et al</u>, Civil No. 2617 (GAG) (Doc 10) (denying motion under Rule 12(b)(6) and noting that "Defendant's motion refers to a plethora of matters outside of the Plaintiff's complaint."); <u>Medina-Rodriguez v. El Platano Criollo, Inc. et al</u>, Civil No. 3188 (ADC) (ECF No. 23) ("the issue of whether plaintiff has standing is a disputed issue of law and fact") <u>De Leon v. Vornado Montehiedra Acquisition LP</u>, 166 F. Supp. 3d 171 (D.P.R. 2016) (Finding that Plaintiffs have demonstrated standing to bring their ADA claim because Plaintiffs are currently <u>deterred</u> from patronizing Montehiedra) (emphasis added)(quoting <u>Equal Access, Inc. v. Ferries del Caribe, Inc.</u>, 405 F.3d 60, 64 (1st Cir.2005), <u>Pickern v. Holiday Quality Foods, Inc.</u>, 293 F.3d 1133, 1138 (9th Cir.2002)), <u>Dudley v. Hannaford Bros. Co</u>., 333 F.3d 299, 304 (1st Cir.2003), and <u>Norkunas v. HPT Cambridge, LLC</u>, 969 F.Supp.2d 184, 193-94 (D.Mass.2013); <u>Suarez-Torres v. Embutidos Dona Maria, Inc</u>., Civil No. 16-1138 (ADC)(MEL)(Doc. 26)  (noting that the court is before a "straightforward case" after Suarez explained in detail her right to sue, under the ADA and Article III of the United States Constitution, and referring the matter to a U.S. Magistrate Judge for a status and settlement conference).

## CAUSE OF ACTION

### Americans with Disabilities Act of 1990

<u>Denial of "Full and Equal" Enjoyment and Use</u>

19.    Plaintiff incorporates the allegations contained in paragraphs 1 through 18.

20.    Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods,

services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

21.   Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

Failure to Remove Architectural Barriers in an Existing Facility

22.   The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

23.   When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

24.   Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

25.   In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

Failure to Design and Construct an Accessible Facility

26.   Plaintiff alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III of the ADA.

17

27.   The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

28.   Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.

<u>Failure to Make an Altered Facility Accessible</u>

29.   Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

30.   The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

31.   Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

<u>Failure to Modify Existing Policies and Procedures</u>

32.   The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

33.    Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

<u>Failure to Prepare Adequate Transition Plan</u>

34.    Upon information and belief, the transition plan, or lack thereof, fails to comply with the requirements of 28 C.F.R. §35.105 Section II-5.3000 and otherwise violates the ADA by failing:

    a.    to conduct a self-evaluation of its services, policies, and practices make modifications necessary to comply with the Department's Title II regulations (28 C.F.R. Part 35), 28 C.F.R. §35.105; (The self evaluation of the venue is incomplete or is inexistent) II-8.2000 Self-evaluation.

    b.    to notify applicants, participants, beneficiaries, and other interested persons of their rights and the Defendant's obligations under Title II and the Department's regulations, 28 C.F.R. §35.106; (The "Transition Plan" does not show or detail how or when notice has been given to interested parties) II-8.4000 Notice to the public.

    c.    to designate a responsible employee to coordinate its efforts to comply and carry out the Defendant's ADA responsibilities, 28 C.F.R. § 35.107(a); (No individual has been designated as the responsible entity.) II-8.5000 Designation of responsible employee and development of grievance procedures.

    d.    to establish a grievance procedure for resolving complaints of violations of Title II, 28 C.F.R. § 35.107(b); (No grievance procedure has been delineated.)

35. Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for:

A. A declaratory judgment that Defendant is in violation of the specific requirements of Title II and Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant's facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs or limited mobility;

B. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504 (a) which directs Defendants to take all steps necessary to remove the architectural barriers described above and to bring its facilities (Rio Grande Plaza, Kentucky Fried Chicken, Supermercado Selectos, Fina China, La Familia Bakery #2, Antoninos Pizza, and the sidewalk adjacent to Rio Grande Plaza) into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its facilities are fully accessible to, and independently usable by, individuals who use wheelchairs or individuals with limited mobility, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant's facilities come into compliance with the relevant requirements of the ADA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

C. Payment of costs of suit;

D.  Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR §

36.505; and,

E.  The provision of whatever other relief the Court deems just, equitable and appropriate.

**RESPECTFULLY SUBMITTED**,

**/S/JOSE CARLOS VELEZ-COLÓN, ESQ.**
**USDC-PR NO.: 231014**
jcvelezcolon@gmail.com

PO BOX 2013
BAYAMON PR 00960

TEL: (787) 599-9003

*Attorney for Plaintiff*